UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NO. 1:25-cv-10334-JEK

DANIEL SANTANA,

        Plaintiff,

v.

CITY OF BOSTON, GUSTAVO MEDINA, ERIC FRANCIS, JOHN CANTY, EDWARD GATELY, SERGIO MEDRANO, RYAN FULLAM, and CHRISTOPHER KEATON,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
CITY OF BOSTON'S MOTION TO DISMISS**

Defendant City of Boston ("the City") respectfully moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all counts of Plaintiff's Complaint ("Complaint") against it. As grounds for this motion, the City states:

1) Counts I and II (negligence and negligent hiring, training retention and/or supervision under the Massachusetts Tort Claims Act, G.L. c. 258) require dismissal because Plaintiff did not present negligence claims to the City within two years of the date of the alleged injury, as he was required to do under G.L. c. 258, § 4.

2) Counts III, IV, and V (false arrest, malicious prosecution, and excessive force under 42 U.S.C. § 1983) are insufficiently pleaded against the City because they incorrectly assert that the City is vicariously responsible for the actions of the individual officers and because

they fail to establish that a custom or policy of the City was the moving force behind Plaintiff's alleged injuries.

Accordingly, the Plaintiff's claims against the City cannot proceed, and the City's Motion to Dismiss must be allowed with prejudice.

## FACTUAL ALLEGATIONS[1]

On August 16, 2021, Boston Emergency Medical Services ("EMS") Supervisor Patrick Calter observed a dispute in the vicinity of 774 Albany Street. Offense Report No. 212057636, annexed hereto as *Exhibit A*, at 1. Calter observed a Black, non-Hispanic male (the "suspect") wearing a white T-shirt, blue jeans, and white Nike Air Jordan sneakers and carrying a black fanny pack. Id. at 1–2; (Complaint, ¶¶ 16–17). The suspect was engaged in an animated verbal dispute with two other individuals. *Exhibit A* at 1–2; (Complaint, ¶¶ 16–17) (citing "Arrest Booking Report"). Calter observed the suspect raise a black object up in a threatening manner and then saw a bright flash of light, which he believed to be a muzzle-flash. *Exhibit A* at 2. Calter also heard a loud blast that he perceived to be a gunshot. Id. Believing he had just witnessed a shooting, Calter reported the incident via radio to EMS Operations, which then dispatched his observations to the Boston Police Department ("BPD"). Id. Calter maintained visual contact with the suspect, who proceeded on foot onto East Concord Street toward Harrison Avenue. Id. The suspect was later identified as Plaintiff Daniel Santana. Id. Plaintiff is a light-skinned Hispanic male. (Complaint, ¶ 18).

Defendant Officers Medina and Francis received a radio transmission from a dispatcher regarding shots fired from East Concord Street and Harrison Avenue, near Boston Medical Center. (Id. at ¶ 15). Officers Medina and Francis drove to the vicinity of 774 Albany Street, and saw

---

[1] For the limited purposes of the instant motion, the City accepts the nonconclusory facts alleged in the Complaint as true.

2

Plaintiff. (Id. ¶¶ 19). Plaintiff was wearing a white T-shirt, blue jeans, and white Nike Air Jordan sneakers, and he was carrying a black fanny pack. *Exhibit A* at 2. This matched the description of the suspect that Calter had relayed to EMS Operations, which had relayed the same to dispatch, which had relayed the same to Officers Medina and Francis. Id. Officers Medina and Francis activated their blue emergency lights, identified themselves as Boston Police Officers, and commanded Plaintiff to stop. Id. Plaintiff continued walking down Harrison Avenue and attempted to conceal himself behind a black Mercedes-Benz. Id.; (see Complaint, ¶ 20) (alleging Defendants Medina and Francis parked their cruiser behind a black SUV, cornering Plaintiff). When Plaintiff emerged from the other side of the black SUV, he was no longer carrying the black fanny pack. *Exhibit A* at 2. Officer Gately, with an unobstructed view of Plaintiff, observed Plaintiff drop the black fanny pack. Id. Officer Gately heard a loud, audible, metallic "thud" as the fanny pack struck the ground. Id. Based on his years of training and experience, Officer Gately believed that this meant a firearm was concealed inside Plaintiff's fanny pack. Id.

Officers Medina and Francis exited the cruiser with their weapons drawn and instructed Plaintiff to put his hands up. (Complaint, ¶ 21). Plaintiff alleges that, due to a preexisting left shoulder injury, he could only lift his right arm above his head and explained as much to the officers. (Id. at ¶¶ 24–25). Plaintiff was given an order to get on the ground, which he did by laying on his back. (Id. at ¶ 26). He alleges that the Defendants then forcibly rolled him onto his stomach. (Id. at ¶ 30). Plaintiff further alleges that he "was not armed at the time of this interaction." (Id. at ¶ 29). Notably, Plaintiff does not allege any facts from which the Court could reasonably infer whether Plaintiff was armed prior to his interaction with Defendants Medina and Francis.

Plaintiff alleges that Defendants Canty, Gately, Medrano, Fullam, and Keaton then arrived at the scene. (Id. at ¶ 31). Although Plaintiff explained that he could not bend his arm, Defendants

allegedly forcibly twisted his arm behind him while officers knelt on him. (Id. at ¶¶ 32–34). Plaintiff's left humerus fractured during his arrest. (Id. at ¶ 35).

After Plaintiff was placed in handcuffs, Officer Gately searched the black fanny pack he had seen Plaintiff drop. *Exhibit A* at 2. Officer Gately located a black handgun with an obliterated serial number and a spent shell casing inside the fanny pack. Id. Officer Fullam then asked Plaintiff to produce a firearm license, to which Plaintiff said, "I don't have one." Id.

Thereafter, Plaintiff was transported by ambulance to Boston Medical Center, where he was diagnosed with a mid-shaft fracture of his left humerus. (Id. at ¶ 38). Plaintiff alleges that he has limited use of his left arm and suffers from permanent nerve injury. (Id. at ¶ 39).

Plaintiff was charged with, *inter alia*, carrying a firearm without a license, (id. at ¶ 40), in violation of M.G.L. c. 269, § 10(n), and carrying a firearm within 500 feet of a dwelling, in violation of M.G.L. c. 131, § 58. Criminal Complaint, annexed hereto as *Exhibit B*, at 2. Officer Canty signed the criminal complaint on August 17, 2021. Id. Plaintiff alleges that the Boston Municipal Court dismissed all criminal charges stemming from Plaintiff's August 16, 2021 arrest. (Complaint, ¶ 41). However, this occurred because in March 2022 a grand jury indicted Plaintiff in Massachusetts Superior Court on charges for, *inter alia*, carrying a firearm without a license. See Indictments, annexed hereto as *Exhibit C*.

## ARGUMENT

### I. STANDARD OF REVIEW

A complaint or count therein must be dismissed if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff, it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To support a claim, the plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element." Gooley v.

4

Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. See id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true, even if doubtful in fact. Twombly, 550 U.S. at 555. The court need not credit "subjective characterizations, optimistic predictions, or problematic suppositions." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). "Empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Id. (internal quotation omitted).

## I. PLAINTIFF'S NEGLIGENCE CLAIMS AGAINST THE CITY ARE BARRED BY LACK OF PRESENTMENT UNDER G.L. c. 258, § 4.

Plaintiff brings two negligence claims against the City under the Massachusetts Tort Claims Act, G.L. c. 258. First, the Complaint asserts a claim of simple negligence, alleging that the defendant officers "owed a duty of care to Plaintiff in the application of force when detaining and taking him into custody," that they breached this duty, and that the City is vicariously liable for the actions of the officers because they were "acting in furtherance of BPD business and within the scope of BPD authority." (Complaint, ¶ 46). Second, the Complaint asserts a claim of negligent hiring, training retention and/or supervision. In support of Count II, the Complaint alleges that the City, through the Boston Police Department[2], had a duty to use reasonable care in the employment, training, and supervision of its employees," which includes a "duty to investigate and find out whether employees are competent to do work without danger of harm to others." (Complaint,

---

[2] The Boston Police Department is a department of the City and not an independent legal entity. See Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989) ("[T]he Police Department is not an independent legal entity. It is a department of the City of Boston.").

5

¶¶ 49, 50). The Complaint further alleges that the City knew or should have known that the defendant officers were "prone to violence, were incompetent, had vicious propensity, and/or had a bad disposition," and that the City "failed to adequately investigate and correct [the defendant officers'] disposition and propensity." (Complaint, ¶¶ 51, 53). The Complaint also alleges that the City "could have easily anticipated the circumstances of August 16, 2021, and failed to provide adequate training as to the appropriate ways in which to take an individual into custody." (Complaint, ¶52). "Because of this history," the Complaint alleges, "the unnecessarily violent incident of August 16, 2021 was a foreseeable consequence of [the City's] failure to adequately train, reprimand, or re-assign" the defendant officers. (Complaint, ¶ 54).

Counts I and II of the Complaint must be dismissed because Plaintiff has failed to comply with the strict presentment requirements specified in General Laws ch. 258, § 4. That section provides that a "civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose …" Id. § 4. Presentment is "a condition precedent to bringing suit under the act, and failure to do so is fatal to the plaintiff's complaint." Drake v. Town of Leicester, 484 Mass. 198, 199 (2020). The purpose of presentment is to provide the opportunity for public employers to "investigate and settle claims." Shapiro v. City of Worcester, 464 Mass. 261, 268 (2013). Lack of presentment as an affirmative defense may be raised under Fed. R. Civ. P. 12(b)(6). See Rodriguez v. City of Somerville, 472 Mass. 1008, 1008, 1010 n.3 (2015); see also Rodi v. Southern New England School of Law, 389 F.3d 5, 12 (1st Cir. 2004) ("As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of

6

information, and (ii) those facts suffice to establish the affirmative defense with certitude.") (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003)).

The complaint alleges that prior to the filing of the lawsuit, "a Notice of Claim was duly served [on] THE CITY OF BOSTON on behalf of the plaintiff on August 15, 2023." Complaint, § 12. However, there is no evidence that a notice or presentment letter was sent to the City in connection with Plaintiff's arrest. No presentment letter was attached as an exhibit to Plaintiff's Complaint. The City has no record of receiving such a letter in August 2023. Undersigned counsel for the City first discussed the presentment issue with Plaintiff's counsel on February 12, 2025, and has since brought up the topic in emails and phone calls. To date, Plaintiff's counsel has been unable to produce the presentment letter.

The fact that no presentment letter has yet been produced are grounds for this Court to dismiss Count I and II. Courts routinely scrutinize the contents of presentment letters at the motion to dismiss stage to determine, for example, whether the plaintiff has given notice to the correct party, or whether the letter was received by the public employer by the presentment deadline. See, e.g., Haley v. Boston, 657 F.3d 39, 54 (1st Cir. 2011) (affirming dismissal of negligence claims where presentment letter was sent after presentment deadline and statute of limitations deadline). A fortiori, a court may infer, even at the motion to dismiss stage, that a plaintiff's failure to produce a presentment letter means that the letter does not exist and presentment was not made. Cf. Comeau v. Webster, 881 F. Supp. 2d 177, 182 & n.3 (D. Mass. 2012) (court's request for affidavit from plaintiff's counsel detailing alleged compliance with presentment requirement along with copies of the presentment letter did not convert entirety of motion to dismiss into motion for summary judgment). This Court should draw such an inference here and dismiss Counts I and II for failing to comply with the requirements of G.L. c. 258, § 4.

In addition, Count II must be dismissed for the separate reason that it consists of conclusory allegations that do not satisfy the Twombly standard. The Complaint includes no details to support the allegations that the defendant officers were "prone to violence, were incompetent, had vicious propensity, and/or had a bad disposition," and that the City "failed to adequately investigate and correct [the defendant officers'] disposition and propensity." (Complaint, ¶¶ 51, 53). Nor are there details to support the allegations that the City "could have easily anticipated the circumstances of August 16, 2021, and failed to provide adequate training as to the appropriate ways in which to take an individual into custody." (Complaint, ¶ 52). Because mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice to survive a motion to dismiss, Gooley, 851 F.2d at 515, this Court should dismiss Count II.

## II. PLAINTIFF'S CLAIMS AGAINST THE CITY UNDER 42 U.S.C. § 1983 MUST BE DISMISSED.

Counts III through V are claims against the defendants under 42 U.S.C. § 1983 alleging false arrest, malicious prosecution and excessive force.

42 U.S.C. § 1983 "creates a private right of action for redressing abridgements or deprivations of federal constitutional rights." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Claims seeking to hold a local government entity liable under § 1983, referred to as Monell claims, must be for the municipality's own misconduct (rather than under a theory of vicarious liability for municipal employees). See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). To plead a Monell claim for a constitutional violation, the plaintiff must allege (1) an unconstitutional "policy or custom," and (2) that this policy or custom was "the moving force" behind the alleged injury. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–05 (1997). A municipality violates the Fourteenth Amendment under Monell if it adopts a policy that codifies a practice of "deliberate indifference" to a pretrial detainee's constitutional rights. See City of Canton v. Harris, 489 U.S.

8

378, 388 (1989). A plaintiff must "show 'both the existence of a policy or custom <u>and</u> a causal link between that policy and the constitutional harm.'" <u>Lucia v. Peabody</u>, 971 F.Supp.2d 153, 167 (D. Mass. 2013) (quoting <u>Santiago v. Fenton</u>, 891 F.2d 373, 381 (1st Cir. 1989)) (emphasis added). "This connection needs to rise above a mere but/for coupling between cause and effect." <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1162 (1st Cir. 1981) (citing <u>Canton</u>, 489 U.S. at 1204–05); <u>see also</u> <u>Stockton v. Milwaukee County</u>, 44 F.4th 605, 618 (7th Cir. 2022).

The Complaint appears to advance two theories of municipal liability for the § 1983 claims. First, for each of Counts III through V, the Complaint alleges that the City "is vicariously liable for for the actions of defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON as these individual defendants were acting in furtherance of BPD business and within the scope of BPD authority." (Complaint, ¶¶ 63, 74, 80). This is a flatly incorrect statement of the law. The Supreme Court has made clear that "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." <u>City of Canton</u>, 489 U.S. at 388 (citing <u>Monell</u>, 436 U.S. at 684-95). The City cannot be held liable for the actions of the individual officers unless Plaintiff can show the existence of an unconstitutional "policy or custom," and that this policy or custom was "the moving force" behind the alleged injury. <u>Brown</u>, 520 U.S. at 403–05. Because the City is not vicariously liable for the actions of the individual officers, and because the Complaint makes no additional allegations about the City with respect to Counts IV and V, those counts must be dismissed against the City.

Second, the Complaint makes vague allusions to the <u>Monell</u> standard in Count III. Alone among the § 1983 claims, Count III contains allegations about the City besides the (erroneous) assertion that the City is vicariously liable for the actions of the individual officers. Specifically,

Count III alleges that "Plaintiff was arrested in the absence of probable cause, at the direction of, or under the practices, policies or customs promulgated by the BPD" and the "individual defendants, and defendant CITY OF BOSTON, collectively and individually, while acting under color of state law, engaged in Constitutionally violative conduct that constituted a custom, usage, practice, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States." (Complaint, ¶ 62). However, these boilerplate, conclusory references to "customs" and practices" far fall short of the Twombly standard. Plaintiff fails to provide details of any supposed unconstitutional custom or practice by the City, such as what the policy consists of, how long it has been in effect, and whether it had been applied to any other case. Instead, the Complaint only offers Plaintiff's arrest on August 16, 2021, as "evidence of a single incident." Mahan v. Plymouth Cnty. House of Corrections, 64 F.3d 14, 16–17 (1st Cir. 1995) (rejecting Monell claim because plaintiff brought "no evidence of prior incidents of inadequate investigation" nor "direct evidence of improper investigatory methods or practices" by the police department). In addition, the Complaint is completely silent with respect to the element of causation. For these reasons, Count III must be dismissed against the City.

## CONCLUSION

For the foregoing reasons, Defendant City of Boston respectfully requests that this Honorable Court dismiss all claims brought against it in Plaintiff's Complaint.

Respectfully submitted,

DEFENDANT CITY OF BOSTON

By its attorneys,

Adam Cederbaum
Corporation Counsel

/s/ Randall Maas
Randall Maas BBO# 684832
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
617-635-4042
Randall.Maas@boston.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 17, 2025.

| March 17, 2025 | /s/ *Randall Maas* |
|---|---|
| Date | Randall Maas |