UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO. 1:25-CV-10334-JEK

DANIEL SANTANA
    *Plaintiff,*

v.

CITY OF BOSTON, GUSTAVO MEDINA, ERIC FRANCIS, JOHN CANTY, EDWARD GATELY, SERGIO MEDRANO, RYAN FULLAM, AND CHRISTOPHER KEATON,
    *Defendants*.

## **AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1. Plaintiff DANIEL SANTANA, ("Plaintiff"), by his attorneys Halstrom Law Offices, PC brings this action for compensatory damages for negligence and negligent hiring & supervision pursuant to the Massachusetts Tort Claims Act.

2. Plaintiff also brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by the Constitution of the United States.

**PARTIES**

3. At all times hereinafter mentioned, the plaintiff was a resident of the County of Suffolk, Massachusetts.

4. At all times hereinafter mentioned, the defendant, THE CITY OF BOSTON, was and is a municipal corporation, duly organized and existing under by virtue of the laws of the State of Massachusetts.

5. At all times hereinafter mentioned, the Boston Police Department ("BPD"), was and is a municipal corporation, duly organized and existing under by virtue of the laws of the State of Massachusetts.

6. At all times hereinafter mentioned, individually named defendants OFFICER GUSTAVO MEDINA ("MEDINA"), OFFICER ERIC FRANCIS ("FRANCIS"); OFFICER JOHN CANTY ("CANTY"), OFFICER GATELY ("GATELY"), OFFICER MEDRANO ("MEDRANO"), OFFICER R. FULLAM ("FULLAM"), and OFFICER KEATON ("KEATON") were employees of defendant CITY OF BOSTON and the BPD.

7. These named officers are sued in their official and individual capacities.

8. At all times hereinafter mentioned, the defendant officers were acting within the scope and course of their employment with the BPD and under color of state law.

9. At all times hereinafter mentioned, all of the actions of defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON alleged herein were done within the scope and course of their employment with the BPD

## JURSIDICTION AND VENUE

10. The amount of damages in this case and the subject matter of this action fulfill the jurisdictional requirements of this Court.

11. This Court is the proper venue in which the Plaintiffs may bring this action.

12. Prior to the institution of this action, and pursuant to Massachusetts General Law C. 258 Section 4, a Notice of Claim was duly served THE CITY OF BOSTON on behalf of the plaintiff on August 15, 2023.

13. Plaintiff hereby invokes this Court's supplemental jurisdiction to hear matters brought under 42 U.S.C. §§ 1983 and 1988.

## FACTS

14. On August 16, 2021 at approximately 9pm, BPD officers MEDINA and FRANCIS were working in the area of Franklin Square Park by East Brookline Street in Boston, Massachusetts.

15. Defendants MEDINA and FRANCIS received a radio transmission from a dispatcher that shots were fired from East Concord and Harrison Avenue, near Boston Medical Center.

16. The dispatcher reported that an unidentified male on Albany Street fired shots into the air after having an argument with another person.

17. The Arrest Booking Report regarding the incident indicated that the suspect was described as a BNH (Black Non-Hispanic) male with a white T-shirt, blue jeans, and white and blue Jordan sneakers.

18. Plaintiff is a light skinned Hispanic male.

19. Defendants MEDINA and FRANCIS drove to the vicinity of 774 Albany Street, where MEDINA observed a light skinned Hispanic male later identified as Plaintiff Daniel Santana.

20. Defendants MEDINA and FRANCIS parked their cruiser behind a black SUV, cornering Plaintiff.

21. Defendants MEDINA and FRANCIS then exited their vehicle with weapons drawn and instructed Plaintiff to put his hands up.

22. Defendants detained Plaintiff despite no indicia that Plaintiff had committed a crime, nor bearing any resemblance to the reported shooter described by dispatch.

23. Plaintiff attempted to comply as best he could.

24. Plaintiff had previously sustained an injury to his left shoulder which required surgery in June of 2021, approximately 2 months prior to this incident.

25. Because of this, Plaintiff was only able to lift his right arm above his head. He tried explained to the defendant officers that his left arm was injured and he couldn't lift it above his head.

26. Plaintiff was then given an order to get on the ground. He complied and lay on his back.

27. Plaintiff then repeated that he had a broken arm and couldn't put his left hand up.

28. Plaintiff complied in good faith with all orders given to him by defendants.

29. Plaintiff was not armed at the time of this interaction, yet defendants continued to point their weapons at him.

30. Plaintiff was then forcibly rolled to onto his stomach by defendants, and he repeated that he had a broken arm and was unable to twist it.

31. At some point during this interaction, several other defendants arrived at the scene. Upon information and belief, they were CANTY, GATELY, MEDRANO, FULLAM, and KEATON.

32. Despite Plaintiff's pleas that he could not bend his left arm, defendants forcibly twisted his arm behind him while multiple police officers knelt on him.

33. Plaintiff could be heard calling out frantically, "Please! I have a broken arm! I'm sorry! My arm is broken! Look! It's broken! My shoulder is broken! My left shoulder is broken, look! Please look! Please! My left shoulder please! Please look man! My left shoulder."

34. Multiple defendant officers continued to kneel on top of Mr. Santana as his left arm was being wrenched behind his back despite his previous injury.

35. Plaintiff's left humerus (upper arm) fractured so loudly that it could be heard on bodycam footage.

36. Plaintiff screamed in pain, saying: "You're breaking my arm! You're breaking my arm."

37. One of the defendant officers could be heard on bodycam footage saying, ""the left arm is definitely fucking broken."

38. Plaintiff was thereafter transported by ambulance to the Boston Medical Center where he was diagnosed with a mid-shaft fracture of his left humerus.

39. As a result of this traumatic fracture to his left arm, Plaintiff has limited use of his left arm and suffers from permanent nerve injury.

40. Plaintiff was charged with, *inter alia*, carrying a firearm without a license despite being unarmed during the encounter with defendants, and incarcerated for months.

41. All charges were dismissed with prejudice by order of the Boston Municipal court for lack of probable cause of the stop and arrest.

42. The City of Boston had a policy or custom of indifference to misconduct by Boston police officers by failing to properly investigate complaints of misconduct and to discipline officers who used unreasonable or excessive force.

43. The City of Boston also had a policy or custom of tolerating a "code of silence" or a "blue wall" in which Boston police officers understood that they were not to report misconduct by fellow police officers.

44. This policy or custom existed in the early 1990s. The recently publicized scandals involving Commissioner Dennis White and union president Patrick Rose demonstrate the

power of the code of silence. Both of these officers were investigated for serious misconduct (domestic abuse and sexual abuse of children, respectively) in the 1990's, but officers protected them.

45. In 1995, the "blue wall" or code of silence prevented Boston police officers from truthfully reporting the beating of Michael Cox, a Black undercover police officer, by other Boston police officers who did not realize he was a fellow officer. This incident resulted in a successful civil suit and a book, The Fence, by Dick Lehr.

46. On May 14, 2021, Acting Boston Mayor Kim Janey said, "a blue wall of silence was confirmed by one retired officer who said he received five phone calls directing him not to cooperate with this investigation." She said, "officers were intimidated into silence for fear of retaliation" during the 2021 investigation into allegations against Commissioner White. The independent investigator was unsuccessful in her attempts to speak with several current or former members of the BPD.

47. Because of this "blue wall" police officers in Boston felt free to use unreasonable and excessive force on protesters. They expected fellow officers would not report their misconduct or intervene to prevent their misconduct. They knew that the police department would accept the word of a police officer over the word of a civilian. They knew that there was a culture of police officers protecting each other by not reporting misconduct by fellow officers.

48. The Boston Police Department developed a custom of making it difficult for citizens to file complaints about the conduct of Boston police officers. The Boston Police Department's own review board found that there "is a strong perception that citizens do

not have easy access to filing complaints in supportive and non-intimidating environments."

49. Once complaints of unreasonable force are filed, the Boston Police Department allowed a custom to develop among its officers of failing to properly investigate these claims and failing to discipline officers who used unreasonable force. As a result, BPD officers with many complaints alleging use of unreasonable force were rarely disciplined for their use of force. See, Cox v. Murphy, Civ. No. 12-11817, 2016 WL 4009978, at *10-11 (D. Mass. Feb. 12, 2016).

50. The Internal Affairs Division of the BPD has, for many years, had a practice of delaying findings on investigations of officer misconduct. Often investigations linger for one to two years, sometimes even longer. This delay allows misconduct to go unpunished since the civilian complainants often cannot be found or have lost interest in the complaint.

51. The policies and customs of the City of Boston described above were the moving force behind the actions of Defendants Medina, Medrano, Fullam, Keaton, Gately, Canty, and Francis.

52. Officer Medina had a previous complaint made against him for use of force (IAD2019-0417).

53. Officer Gately had at least three previous complaints or investigations against him for respectful treatment and use of force (E2010-033), negligent duty/unreasonable judgment (IAD2013-0219), and violation of prisoners/booking procedures (IAD2019-0578).

54. Officer Medrano had at least two previous complaints made against him for conduct unbecoming (IAD2017-0295) and negligent duty/unreasonable judgment and violation of prisoners/booking procedures (IAD2018-0301).

7

## COUNT I:
## NEGLIGENCE

55. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

56. Defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON owed a duty of care to Plaintiff in the application of force when detaining him and taking him in to custody.

57. Defendants breached this duty and negligently caused emotional distress, psychological harm, physical injuries and damage to Plaintiff.

58. The acts and conduct of these defendants were the direct and proximate cause of injury to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws of the Constitution and common law of the State of Massachusetts.

59. Defendant the CITY OF BOSTON is vicariously liable for the actions of defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON as these individual defendants were acting in furtherance of BPD business and within the scope of BPD authority.

60. As a result of the foregoing, Plaintiff was caused to suffer physical, psychological and emotional injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of liberty, and damage to his reputation and his standing within his community.

## COUNT II:
## NEGLIGENT HIRING, TRAINING, RETENTION AND/OR SUPERVISION

61. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

62. THE CITY OF BOSTON and Boston Police Department ("BPD") has a duty to use reasonable care in the employment, training and supervision of its employees.

63. This includes a duty to investigate and find out whether employees are competent to do work without danger of harm to others.

64. The BPD knew or should have known that Defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON were prone to violence, were incompetent, had vicious propensity, and/or have a bad disposition.

65. The BPD could have easily anticipated the circumstances of August 16, 2021, and failed to provide adequate training as to the appropriate ways in which to take an individual into custody.

66. The BPD failed to adequately investigate and correct MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON'S disposition and propensity.

67. Because of this history, the unnecessarily violent incident of August 16, 2021 was a foreseeable consequence of BPD's failure to adequately train, reprimand, or re-assign Defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON .

68. As a direct, sole and proximate result of the BPD' failure to take appropriate action, Plaintiff was caused to sustain psychological trauma, humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal reputation, inconvenience, medical expenses, disturbance and disruption of life, permanent and debilitating physical injuries, and significant economic damages.

## COUNT III:
## FALSE ARREST UNDER 42 U.S.C. §1983

69. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

70. Plaintiff was arrested in the absence of probable cause, at the direction of, or under practices, policies or customs promulgated by the BPD.

71. At the time of plaintiff's arrest, there was no credible evidence that plaintiff had committed a crime.

72. All of the aforementioned acts of the Defendant CITY OF BOSTON, and the individual defendants and their agents, servants, and employees, were carried out under the color of state law.

73. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, the violations of which are actionable under 42 U.S.C. §1983.

74. The acts complained of were carried out by the aforementioned individual defendants, in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

75. The individual defendants, and defendant CITY OF BOSTON, collectively and individually, while acting under color of state law, engaged in Constitutionally violative conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

76. Defendant the CITY OF BOSTON is vicariously liable for the actions of defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON as

these individual defendants were acting in furtherance of BPD business and within the scope of BPD authority.

77. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of liberty, and damage to his reputation and his standing within his community.

## COUNTY IV:
## MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983

78. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

79. At the aforementioned times and locations, Plaintiff was detained in the absence of probable cause by defendants and other unidentified officers of the BPD present on the scene.

80. Defendants commenced the criminal action against plaintiff in the absence of probable cause that a crime had been committed by Plaintiff.

81. Defendants commenced this criminal action out of malice.

82. The criminal action against plaintiff has terminated in his favor.

83. At all times hereinafter mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

84. Plaintiff was conscious of the confinement.

85. As a direct, sole and proximate result of this malicious prosecution, plaintiff was caused to sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal reputation, inconvenience, disturbance and disruption of life, and loss of liberty.

86. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the law of the Constitutions of the State of Massachusetts and of the United States.

87. Defendant the CITY OF BOSTON is vicariously liable for the actions of defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON as these individual defendants were acting in furtherance of BPD business and within the scope of BPD authority.

88. As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer psychological and emotional injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to his reputation and his standing within their community.

## COUNT V:
## EXCESSIVE FORCE Under 42 U.S.C. §1983

89. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

90. The individually named defendants, acting under color of law, deprived Plaintiff of his right to freedom from the use of excessive force without due process of law in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, actionable under 42 U.S.C. § 1983.

91. Defendants subjected Plaintiff to these deprivations of his rights either maliciously or by acting with a reckless disregard for whether Plaintiff's rights would be violated by his actions.

92. Under the circumstances, the conduct of the individually named defendants was unreasonable.

93. Defendant the CITY OF BOSTON is vicariously liable for the actions of defendants MEDINA, FRANCIS, CANTY, GATELY, MEDRANO, FULLAM, and KEATON as these individual defendants were acting in furtherance of BPD business and within the scope of BPD authority.

94. That as a direct, sole and proximate result of the defendants' excessive, unjustified and unreasonable use of force, Plaintiff was caused to sustain severe and permanent physical injury, psychological trauma, humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal reputation, inconvenience, disturbance and disruption of life, and significant economic damages.

**JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all of the defendants:

   a. Compensatory damages;
   b. Punitive damages;
   c. The convening and empaneling of a jury to consider the merits of the claims herein;
   d. Costs and interest and attorney's fees;
   e. Such other and further relief as this court may deem appropriate and equitable.

Respectfully submitted,
PLAINTIFFS,
By their Attorneys,

Date: 4/22/25                              /s/ Ingrid A. Halstrom

|                                    | Ingrid A. Halstrom, BBO # 694272 |
|---|---|
|                                    | Halstrom Law Offices, PC |
|                                    | P.O. Box 121203 Lafayette Station |
|                                    | Boston, MA  02112-1203 |
|                                    | (617) 262-1060 |
|                                    | ingrid.halstrom@halstrom.law |